Dock GREEN, Libellant,

v.

SKIBS A/S MANDEVILLE and A. S. Klaveness & Co., A/S Managers and the S/S KINGSVILLE, Respondents,

and

Palmetto Stevedoring Company, Inc., Respondent-Impleaded.

No. 1085.

United States District Court
E. D. South Carolina,
Charleston Division.

Oct. 24, 1960.

Jacobson, Rosenblum & Spar, Charleston, S. C., Robert Klonsky, Brooklyn, N. Y., for libellant.

Waring & Brockinton, Charleston, S. C., for respondents.

Moore & Mouzon, Charleston, S. C., for respondent-impleaded.

WYCHE, District Judge.

This matter now comes before me on motion of the libellant for amendment of the findings, or additional findings, or in the alternative a new trial.

The libellant's claim is for damages on account of injuries received on July 26, 1956, when a boom fell on board the S/S Kingsville. At the time, the boom was being rigged by a gang of longshoremen employed by Palmetto Stevedoring Company at the Port of Charleston. The libellant was a member of the gang and had the specific duty of placing and handling the bull cable upon the winch drum when the boom was being lowered.

An inspection made immediately after the accident of the ship's appliances and appurtenances established that these were in perfect condition and operating with complete satisfaction, except that the boom was bent and the bull cable had parted about eight inches from a metal hook affixed by a splice at its extremity. I was convinced from the testimony that neither of these conditions caused the boom to fall and that the only reasonable conclusion was that these appliances were damaged as a result of the fall.

The libellant now argues that I erred in concluding that the parting of the bull cable was the result of the fall of the boom rather than its cause and says that the hook at the cable's extremity must have been inserted in the flange of the

winch drum since no damage was done to any appurtenance upon which the hook might have caught during the fall of the boom. I find no logic in this argument, as there were many solid structural elements (such as stanchions, bolt heads, winch frames, winch supports, etc.) which might readily have engaged the hook without damage to themselves during the violent threshing about of the bull cable from the pull of the rapidly falling boom. There is ample support from the evidence for the conclusion that the cable parted as a result of the fall of the boom and did not cause the fall, and nothing has been shown by the libellant which leads me to believe that this conclusion is not justified.

In my view upon all of the evidence, however, it really makes no difference whether the bull cable parted before the boom's fall, during the fall, or afterward. I have found, and am still convinced, that the libellant was "spooling" the bull cable upon the winch drum, in which operation the extremity of the this lengthy cable with the affixed hook would in no respect play any part in holding up the boom. Under these circumstances, even if the hook was inserted in the flange of the winch (which is hardly conceivable) there would be no strain from the pull of the boom upon the hook or the cable adjacent to it during the process of lowering the boom, hence there could be no possible causal connection between a parting of the cable at or near the flange and the fall of the boom.

Libellant also points out that there was testimony presented to the effect that the bull cable was not being "spooled" upon the winch drum but was held by the hook in the flange with about five turns of the cable around the drum, at which time the cable parted and the boom fell. I discussed this testimony in my opinion and there pointed out why I regarded it as incredible. I am not now persuaded that I was previously wrong in this respect or that I should resolve this conflict of testimony any differently than was heretofore done.

The libellant further contends that there should have been provided some sort of automatic braking device to prevent the boom from falling in the event of such a circumstance as did occur. The weight of the testimony was that the topping-lift drum and its appurtenances were not defective in any respect and functioned properly in the performance of the uses for which they were designed; that while there are some ships equipped with automatic brakes on the topping-lift winches, this is not usually the case; that the equipment in use on this ship was such as is in general use in modern ship construction; and that all of the ship's appliances and appurtenances were of sound design and in fit condition reasonably to fulfill their intended use. The mind of man cannot be expected to conceive of every device which would have to be supplied to prevent disaster in all eventualities and the standard for preventative measures against accident is one of reasonable adequacy, not perfection. I must adhere to my earlier conclusion, based upon the evidence before me, that the vessel was in all respects seaworthy and that her appurtenances, appliances and equipment were in good operating condition and reasonably fit for the use to which they were being put at the time of and under the circumstances relating to the accident in which the libellant was injured.

The credible evidence points inescapably to the conclusion that the libellant himself, by his own negligent use of adequate and sound equipment, brought about his injury. The weight of the evidence convinces me that respondent furnished a safe place for the libellant to perform his work and appliances and appurtenances which were reasonably fit and adequate for such work. Under the circumstances of this case, I can find no basis for recovery of damages by the libellant from the respondent. I am not left with the feeling that an injustice has been done by reason of my decree dated August 20, 1960 or that there is

any cause for amending my findings, or for additional findings, or for a new trial. Accordingly, it is

Ordered that the motion of the libellant for amendment of the findings, or additional findings, or in the alternative a new trial, is hereby denied.