292 F.2d 393
 Dock GREEN, Libelant, Appellant,
v.
SKIBS A/S MANDEVILLE and A. S. Klaveness & Company, A/S
Managers and THE S/S KINGSVILLE, Respondents, and
Palmetto Stevedoring Co., Inc.,
Respondent-Impleaded, Appellees.
 No. 8319.
 United States Court of Appeals Fourth Circuit.
 Argued June 15, 1961.
Decided June 19, 1961.
 
 Robert Klonsky, Brooklyn, N.Y., and I. H. Jacobson, Charleston, S.C. (Jacobson, Rosenblum & Spar, Charleston, S.C., and Di Costanzo, Klonsky & Sergi, Brooklyn, N.Y., on brief), for appellant.
 D. A. Brockinton, Jr., Charleston S.C. (Waring & Brockinton, Charleston, S.Ct., on brief), for appellees Skibs A/S Mandeville and A. S. Klaveness & Company, et al.
 Harold A. Mouzon, Chareston, S.C. (Moore & Mouzon, Charleston, S.C., on brief), for appellee Palmetto Stevedoring Company, Inc.
 Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit judges.
 HAYNSWORTH, Circuit Judge.
 
 
 1
 The libelant, a longshoreman, injured his knee when he full or was knocked from the masthouse of the ship to her main deck. He sought damages from the ship, which impleaded the stevedore-employer of the libelant. The District Court's decree exonerated the ship, and the libeland has appealed.
 
 
 2
 The injury was sustained as the libelant and other longshoremen were undertaking to place one of the ship's cargo booms in position preparatory to unloading operations. The ship, a Norwegian, was on her maiden voyage. She was provided with gear for placing the booms somewhat unlike the usual system found upon American vessels. However, the testimony shows that it is the system found upon most of the foreign vessels, particularly the newer, more modern ones. Most of the work of the stevedore was on foreign vessels, and these longshoremen were familiar with the system. Under this system, the topping-lift cable runs, and is permanently secured, to a drum having no power of its own. This drum is divided by a flange into two sections. From the section other than the one carrying the topping-lift cable, may be run a bull cable to the gypsy-head of the cargo winch. Through the use of the bull cable, the turns of the topping-lift drum may be controlled by the cargo winch in the same manner as if the topping-lift cable was run directly to the gypsy-head of that winch, as is generally done on American ships.[1]
 
 
 3
 There was testimony that the longshoremen placed the hook at the bitter end of the bull line in the flange of the gypsy-head, took up the slack in the bull line, and were engaged in lowering the boom, when the bull line cable parted at the splice near its hook. As the boom fell, the fast running bull line struck the libelant, knocking him off the masthouse platform to the main deck. In a pretrial deposition, however, the libelant had testified repeatedly that the hook at the bitter end of the bull line had not been secured to the flange of the gypsy-head, but that, instead, he had taken six turns of the bull cable around the gypsy-head, and was holding the free end of the bull line to maintain tension on the turns. Momentarily, he relaxed the tension; the loosened turns began to run out, and the libelant jumped clear to escape the running cable.
 
 
 4
 There is no doubt that the steel bull cable parted near the hook. Whether this occurred as a result of the relatively minor tension, which would have been upon it if the hook had been secured to the flange behind several turns of the bull line around the gypsy-head, or whether it parted as result of the flying hook being caught in something on the ship as the racing and snapping bull line paid out behind the falling boom, was a question of fact which was settled by the findings of the District Court. The District Judge believed the libelant's version of the occurrence as detailed in his pretrial deposition, supported and corroborated to some extent by other evidence, and disbelieved the libelant's trial version. It was for the District Judge to determine which version of the occurrence to accept. His detailed findings on this aspect of the are supported by the record. We accept them, as we must.
 
 
 5
 It, also, was claimed that the equipment was unseaworthy because the topping-lift drum was not provided with a brake which could be operated to stop the drum when revolving at high speed. It was equipped with a rechet and a latch bar, which, when engaged, would prevent the turning of the drum, but there was, also, testimony that this could not be engaged when the drum was turning at very high speed. In the American system, however, there would be no such intervening braking device between the gypsy-head and the topping-lift cable, and there was affirmative testimony that this system was not only modern, but adequate and safe when used as it was intended to be used. After the accident, all of the equipment was tested and found to be operating normally and properly, except, of course, for the break in the bull line near its bitter end.
 
 
 6
 Finally, the libelant contends that he was not provided a safe place to work. He says there was no room to stand behind the gypsy-head, but that he was required to stand between the gypsy-head and the topping-lift drum, near where that part of the bull line not in use was piled.[2]
 
 
 7
 There was some opinion evidence to support his contention, but it was contradicted by other opinion evidence.
 
 
 8
 All of the detailed findings of fact are adequately supported in the record and they fully justify the conclusion of the District Court that the injury was solely the result of the libelant's failure to maintain the necessary tension on the free end of the bull line which he was attempting to pay out, after having looped it around the gypsy-head.
 
 
 9
 The appeal presents only factual questions, which the findings of the District Judge, supported by the record, have foreclosed.
 
 
 10
 Affirmed.
 
 
 
 [1]
 This equipment and its operation are described in greater detail in the opinion of the District Court, 188 F.Supp. 65
 
 
 [2]
 To this extent, this contention is inconsistent with his contention that the hook of the bull line was secured to the flange of the gypsy-head, in which event no part of the bull line would have been on the deck